Alan Ray CLUCK *v.* STATE of Arkansas

CR 05-677                                          226 S.W.3d 780

Supreme Court of Arkansas
Opinion delivered February 2, 2006

*Knutson Law Firm*, by: *Gregg A. Knutson*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Alan Ray Cluck appeals his felony conviction for possession of drug paraphernalia with intent to manufacture methamphetamine. The jury sentenced Cluck as a habitual offender to a term of fifteen years' imprisonment. Cluck raises four points on appeal. We affirm.

On July 8, 2003, after obtaining information that Cluck had purchased iodine from a local food store, Officer Will Dawson of the 12th and the 21st Judicial Drug Task Force decided to make contact with Cluck. Cluck's parole officer, Heather Douglas, and another police officer, Suzanne Bobbitt, accompanied Officer Dawson. When they did not find Cluck at his home, they located him at his brother's house nearby, where Cluck's car was parked. When Officer Dawson asked Cluck what the iodine was for, Cluck responded that he had gotten it for a friend. Officer Douglas searched Cluck's car and found a bottle of hydrogen peroxide and a bottle of alcohol, both of which Cluck immediately claimed belonged to him. The three police officers, along with Cluck, then traveled to Cluck's residence. Officer Dawson testified that Cluck gave consent for the officers to search his residence and any outbuildings. The officers recovered several items associated with the production of methamphetamine from Cluck's residence and outbuilding.

Cluck was charged with possession of drug paraphernalia with intent to manufacture methamphetamine, a Class B felony, and found guilty and sentenced. He appealed to the court of appeals, and his judgment of conviction was reversed. *See Cluck v. State*, 91 Ark. App. 220, 209 S.W.3d 428 (2005). We granted the State's petition for review. When we grant review, we consider the appeal as if it was originally filed in this court. *Stone v. State*, 348 Ark. 661, 74 S.W.3d 591 (2002).

## I. Sufficiency of the Evidence

Cluck contends as one of his points on appeal that the circuit court erred when it denied his motion for a directed verdict. Because this issue implicates Cluck's right to be free from double jeopardy, we will consider it first. *Williams v. State*, 363 Ark. 395, 214 S.W.3d 829 (2005).

Cluck claims that the State's proof only shows the presence of common household items. He maintains that no evidence was produced showing that he intended to use the items to manufacture methamphetamine. Additionally, he points out that several ingredients necessary to produce methamphetamine were not present, and no methamphetamine was found at his residence.

Cluck also relies on *Gilmore v. State*, 79 Ark. App. 303, 87 S.W.3d 805 (2002), for the proposition that a person should not be deprived of his liberty on mere suspicion or conjecture. According to Cluck, the State produced only circumstantial evidence to show that he used the items found at his house and in his car to manufacture methamphetamine. Cluck goes on to explain that all the witnesses at trial described legitimate uses for the items found. Cluck finally makes the point that the prior convictions were remote in time and insufficient to show intent, as they only gave rise to suspicion or conjecture that Cluck might have had possession of the items with the intent to manufacture methamphetamine.

Our standard of review for a sufficiency challenge is as follows:

> We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Coggin v. State,* 356 Ark. 424, 156 S.W.3d 712 (2004). This court has repeatedly held that in reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Stone v. State,* 348 Ark. 661, 74 S.W.3d 591 (2002). We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.*
>
> Circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and

inconsistent with any other reasonable conclusion. *Edmond v. State*, 351 Ark. 495, 95 S.W.3d 789 (2003). Whether the evidence excludes every other hypothesis is left to the jury to decide. *Carmichael v. State*, 340 Ark. 598, 12 S.W.3d 225 (2000). The credibility of witnesses is an issue for the jury and not the court. *Burley v. State*, 348 Ark. 422, 73 S.W.3d 600 (2002). The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

*Tillman v. State*, 364 Ark. 143, 146, 217 S.W.3d 773, 775 (2005).

We agree with the State that the evidence presented at trial was sufficient to support Cluck's conviction. Officer Dawson testified that he identified Cluck as the man who had purchased iodine, an ingredient used to manufacture methamphetamine, from one of the stores that he monitored and that he could not determine that Cluck was legally using the iodine.[1]

Officer Dawson further testified that he, along with two other police officers, made contact with Cluck and questioned him regarding the iodine. Officer Dawson stated that Cluck responded that he had purchased the iodine for a friend. In addition to finding a container of hydrogen peroxide and isopropyl alcohol in Cluck's vehicle, the officers discovered other items used to manufacture methamphetamine at Cluck's residence. An empty can of toluene was found in his garage. In his kitchen, the officers discovered Red Devil lye, salt, isopropyl alcohol, drain cleaner, and muriatic acid. The officers also found Equate allergy sinus pills, Dollar General cold and allergy pills, PVC gloves, a piece of tubing, and a syringe. Officer Dawson concluded that all the listed items were of a type used to manufacture methamphetamine.

A second witness, Mitch Carolan, a criminal investigator for the Arkansas State Police who was trained in the detection of the processes used to manufacture methamphetamine, testified that based on his training and experience, the items found at Cluck's residence appeared to be those used to manufacture methamphetamine. Officer Heather Douglas further testified that she was a parole officer and that Cluck was on parole for conviction of

---

[1] Officer Dawson testified that because iodine is legitimately used by farmers to treat sores on cattle, he drove by Cluck's residence to determine whether there were any animals there. Officer Dawson found no animals at Cluck's residence.

conspiracy to manufacture methamphetamine and for possession with intent to deliver methamphetamine.

The apposite section of the criminal code under which Cluck was charged reads: "[i]t is unlawful for any person to . . . possess . . . drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to . . . manufacture . . . a controlled substance[.]" Ark. Code Ann. § 5-64-403(c)(2)(A) (Supp. 2001). Drug paraphernalia is defined by statute as "all equipment, products, and materials of any kind which are used, intended for use, or designed for use, in . . . manufacturing, . . . a controlled substance in violation of subchapters 1-6 of this chapter[.]" Ark. Code Ann. § 5-64-101(v) (Repl. 1997). Under § 5-64-101(v), in order to determine whether an object is drug paraphernalia, courts are directed to consider, "in addition to all other logically relevant factors, the following: . . . (2) Prior convictions, if any, of an owner, or of anyone in control of the object, under state or federal law relating to any controlled substance; . . . (14) Expert testimony concerning its use[.]" *Id.*

The jury had before it evidence of the items found at Cluck's residence and in his vehicle, but it was also informed of Cluck's iodine purchase and of Cluck's prior convictions relating to a controlled substance (methamphetamine) in addition to the expert testimony concerning how the items found in Cluck's possession are used to manufacture methamphetamine. A defendant's criminal intent may be inferred from circumstantial evidence, and circumstantial evidence may be used to support a conviction so long as it is consistent with a defendant's guilt. *Smith v. State*, 346 Ark. 48, 55 S.W.3d 251 (2001). This evidence easily supports Cluck's conviction.

As a final point, Cluck's argument that the evidence was insufficient because the police officers did not find all the ingredients necessary to manufacture methamphetamine has no merit. Neither this statute nor this court's prior case law require that *all* the ingredients necessary to manufacture methamphetamine be found in a defendant's possession in order for that defendant to be charged and convicted for committing this crime.

We affirm on this point.

## II. Parole Officer

Cluck next urges that the circuit court erred when it allowed the State to introduce evidence that Officer Heather Douglas was

Cluck's parole officer for prior convictions of conspiracy to manufacture methamphetamine and possession of methamphetamine with intent to deliver, as these facts had minimal independent relevance and the probative value did not substantially outweigh the danger of unfair prejudice. He explains that the court allowed the State to introduce this evidence in response to his counsel's general questions during cross-examination of Officer Dawson about how the items found in Cluck's possession were everyday household items and might be legally used. This was error, he contends.

Cluck further maintains that the only probative value of the evidence of his prior convictions was to show that he previously had been convicted of similar crimes and not that he intended to manufacture methamphetamine. He asserts that the evidence of prior crimes was not independently relevant because it only showed that he had been convicted of two earlier crimes. For these reasons, he seeks (a) a determination that the circuit court abused its discretion in admitting this testimony and (b) reversal of his conviction.

This court reviews evidentiary rulings using an abuse-of-discretion standard:

> This Court has held that trial courts are afforded wide discretion in evidentiary rulings. *See Hawkins v. State*, 348 Ark. 384, 72 S.W.3d 493 (2002). Specifically, in issues relating to the admission of evidence under Ark. R. Evid. 401, 403, and 404(b), we have held that a trial court's ruling is entitled to great weight and will not be reversed absent an abuse of discretion. *See, e.g., Cook v. State,* 345 Ark. 264, 45 S.W.3d 820 (2001). This Court will, likewise, not reverse absent a showing of prejudice. *Gaines v. State,* 340 Ark. 99, 8 S.W.3d 547 (2000).

*McCoy v. State,* 354 Ark. 322, 325, 123 S.W.3d 901, 903 (2003).

Prior to trial, Cluck filed a motion in limine to prevent Officer Heather Douglas from testifying that Cluck was on parole at the time of his arrest and that she was his parole officer. The court ruled that Officer Douglas could testify that she was employed as a parole officer but not that Cluck was on parole. Additionally, Cluck moved in limine to preclude the State from introducing evidence of his prior convictions for conspiracy to manufacture methamphetamine and possession of methamphetamine with intent to deliver. In his preliminary ruling, the trial

judge stated that those two prior convictions would "become relevant only if the defendant puts into question ignorance, lack of knowledge, et cetera[.]" The trial judge further added that he was denying "the use of the two previous convictions unless the defendant first brings up the issue as far as ignorance and lack of knowledge, et cetera."

Following Cluck's cross-examination of Officer Dawson, the State maintained that Cluck had opened the door for the State to be able to inquire about Rule 404(b) evidence as Cluck had made his intent an issue. The State explained that when defense counsel elicited testimony from Officer Dawson that most of the items found in Cluck's home were common household items with legitimate uses, this placed knowledge and intent directly at issue. The trial judge ruled in favor of the State, noting that it was "the defendant's contention that he just accidentally had these things and they were being used for lawful purposes." The trial judge further said that "the intent or . . . the knowledge that he has becomes critical as far as the State is concerned[.]" Hence, the judge allowed Officer Heather Douglas to testify that Cluck was on parole under her supervision for his conviction of conspiracy to manufacture methamphetamine. Officer Heather Douglas was also permitted to testify about Cluck's prior conviction for possession of methamphetamine with intent to deliver. The judge then admonished the jury that they were to consider the evidence of Cluck's prior convictions only for the purpose of proof of motive, intent, knowledge, identity, or absence of mistake or accident, and that they were not to consider that evidence for the purpose of proving bad character.

Arkansas Rule of Evidence 404(b) prevents evidence of other crimes, wrongs, or acts to prove the character of a person in order to show that he acted in conformity therewith, but it allows such evidence as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Ark. R. Evid. 404(b) (2005).

This court has written the following regarding our analysis of a Rule 404(b) issue:

> If the evidence of another crime, wrong, or act is relevant to show that the offense of which the appellant is accused actually occurred and is not introduced merely to prove bad character, it will not be excluded. The test for establishing motive, intent, or plan as an Ark. R. Evid. 404(b) exception is whether the evidence of the other

act has independent relevance. To be probative under Rule 403,
the prior criminal act must be similar to the crime charged.

*McCoy*, 354 Ark. at 326, 123 S.W.3d at 903-04 (citations omitted).

We have held that in order to find prior crimes
admissible under Rule 404(b), this court must find that the
evidence is "independently relevant, thus having a tendency to
make the existence of any fact that is of consequence to the
determination of the action more or less probable than it would be
without the evidence." *Cook v. State*, 345 Ark. 264, 270, 45
S.W.3d 820, 824 (2001). The State asserts that it offered evidence
of Cluck's prior crimes to show his knowledge, which was highly
probative of his intent to use the found items illegally. To that end,
the State argues that Cluck's prior crimes are independently
relevant as proof of knowledge and intent to commit an offense.
We agree with the State and hold that the evidence of prior crimes
falls within the Rule 404(b) exception.

Next, we consider whether, under Rule 403, the
probative value of the prior-crime evidence is substantially out-
weighed by the danger of unfair prejudice. Cluck maintains that
the circuit court abused its discretion because it failed to weigh the
probative value of the evidence against the danger of unfair
prejudice. We note, however, that this argument was not made to
the circuit court and is made for the first time on appeal. More-
over, it is incumbent on defense counsel to get a ruling from the
circuit court on issues he now argues on appeal. Because Cluck
runs afoul of both of these bedrock principles for appellate review,
we hold that the Rule 403 issue is not preserved for our consid-
eration. *See Riggs v. State*, 339 Ark. 111, 3 S.W.3d 305 (1999)
(holding that it is incumbent on defense counsel to request the trial
court to conduct a probative-prejudicial weighing with respect to
evidence if the defense considers such weighing to be important or
legally required).

Finally, the fact that Cluck was on parole and that
Officer Heather Douglas testified to this status does not constitute
reversible error. That is because the jury, which was permitted to
learn of his prior crimes, would not be surprised to hear that he was
on parole as a result of those crimes. This court has held that
evidence that is cumulative is not considered to be prejudicial. *See,
e.g., Threadgill v. State*, 347 Ark. 986, 69 S.W.3d 423 (2002). There
was no abuse of discretion in this regard.

### III. Rebuttal Witness

Cluck next urges that the circuit court erred when it allowed the State to call Sergeant Jerry Pittman as a rebuttal witness, because he was not disclosed as a witness by the State prior to trial. Cluck further contends that the court erred by allowing Sergeant Pittman to testify about items found pursuant to a prior unrelated search of Cluck's home, because his testimony was unduly prejudicial and cumulative.

The real question in this case, although not described as such by Cluck, is whether Sergeant Pittman was a proper rebuttal witness. Cluck appears to concede in his brief that the State is not required to disclose a proper rebuttal witness by citing this court to *Isbell v. State,* 326 Ark. 17, 931 S.W.2d 74 (1996) (holding that the disclosure of proper rebuttal witness was not required). Cluck, however, contends that the items described by Sergeant Pittman went beyond rebutting the evidence presented by Cluck through the testimony of his mother and father that the items seized were simply normal, everyday household items. He claims that the sheer number of items to which Sergeant Pittman testified was extremely prejudicial and should have been excluded. According to Cluck, Sergeant Pittman should have been limited in his testimony to the uses of particular items referred to by his parents.

In 1993, this court examined the propriety of a rebuttal witness's testimony. *See Pyle v. State,* 314 Ark. 165, 862 S.W.2d 823 (1993). In *Pyle,* the appellant argued that the circuit court abused its discretion in allowing a rebuttal witness to testify regarding the appellant's prior bad acts. According to the appellant in that case, the evidence to which the rebuttal witness testified included an element that the State should have proven during its case-in-chief. The appellant further maintained that this rebuttal witness was not disclosed to the defense prior to trial. This court decided that the answer to the appellant's argument would be reached by determining whether the State's witness was "properly a rebuttal witness." *Pyle,* 314 Ark. at 178, 862 S.W.2d at 830. We then looked to our definition of rebuttal evidence from a prior case, which held that "genuine rebuttal evidence consists of evidence offered in reply to new matters." *Id.* (internal quotations omitted). This court further said that "evidence can still be categorized as genuine rebuttal evidence even if it overlaps with the evidence in chief." *Id.* at 178-79, 862 S.W.2d at 830. According to this court, "the evidence must be responsive to that which is presented by the defense." *Id.* at 179, 862 S.W.2d at 830.

In *Pyle*, after the appellant testified in his defense that he had no prior knowledge of cocaine being in his house and that he had never sold drugs, the State called a rebuttal witness to testify that he had traded auto parts with the appellant in exchange for cocaine in the past and that he had used cocaine with the appellant. This court held that because the defense was lack of knowledge, the testimony of the State's rebuttal witness "was proper both as rebuttal and as evidence of prior acts for the purpose of showing knowledge under Ark.R.Evid. 404(b)." *Id.* This court also concluded that because the rebuttal witness satisfied this court's definition of such a witness, the State was not required to disclose information regarding this witness prior to trial. *Id. See also Isbell*, 326 Ark. at 26, 931 S.W.2d at 79 (holding that the prosecutor is not required "to provide the defense with the names of rebuttal witnesses because until the defense case has been presented the State cannot know of witnesses needed for rebuttal").

Using our reasoning in *Pyle*, we conclude that Sergeant Pittman was a proper rebuttal witness. First, the State called Sergeant Pittman to testify in response to a new matter raised by Cluck through the testimony of his parents. The new theory was that Cluck actually intended to use the items found by police officers for legitimate purposes and not to manufacture methamphetamine. Secondly, while the evidence overlapped with the evidence presented by the State during its case-in-chief, in the sense that it was further evidence of a crime already referred to by the prosecution, this court held in *Pyle* that such an overlap may be permissible in rebuttal.

Thirdly, as in *Pyle*, the rebuttal evidence presented by the State in the instant case was in response to the evidence presented by Cluck in his defense. The defense appeared to be that he lacked the intent to use the drug paraphernalia for illegal purposes but, instead, intended to use it for legitimate purposes. In light of this defense, the State's rebuttal witness, Sergeant Pittman, was proper both as a rebuttal witness and to present evidence of prior acts for the purpose of showing intent under Arkansas Rule of Evidence 404(b). In short, because Sergeant Pittman was a proper rebuttal witness, the State was not required to disclose information regarding this witness prior to trial.

Finally, in response to Cluck's assertion that this evidence was cumulative, it does not appear from his brief that he developed this argument, as he cited no law in support of this

contention. In addition, he failed to explain why this evidence was cumulative. In fact, Cluck's only reference to the word cumulative is one mention of it in his heading for this point in his brief on appeal. Because Cluck failed to develop this argument by citing authority to support it, this court refrains from discussing it. *See Hester v. State*, 362 Ark. 373, 386, 208 S.W.3d 747, 754 (2005) (stating that "[t]his court does not research or develop arguments for appellants").

There was no abuse of discretion by the circuit court regarding this point.

### *IV. Jury Instructions*

For his final point, Cluck claims that the circuit court erred when it refused to give proffered jury instructions: (1) defining drug paraphernalia, because Arkansas statutes require the fact-finder to consider numerous factors in deciding whether an object is drug paraphernalia; and (2) defining the lesser-included offense of attempted possession of drug paraphernalia with intent to manufacture methamphetamine, because there was testimony on which the appellant could have been found guilty of the lesser offense.

Regarding his first proffered instruction, Cluck asserts that the instruction he requested is required by Ark. Code Ann. § 5-64-101(v) (Repl. 1997), which states that "a court or other authority should consider, in addition to all other logically relevant factors, the following" list of fourteen factors. Cluck maintains that not only was the court required to inform the jury of these factors, but these factors would have been helpful to the jury in determining what constitutes drug paraphernalia. Cluck urges that the instruction given by the court was AMCI2d 6418.2, which merely states a brief definition of what constitutes drug paraphernalia, thus, depriving the jury of the detail included in the statutory instruction he requested.

For the second proffered instruction, Cluck contends that it was reversible error for the court to refuse to give an instruction of a lesser-included offense when the instruction is supported by even the slightest evidence. *Citing Harshaw v. State*, 344 Ark. 129, 39 S.W.3d 753 (2001). Cluck maintains that there was evidence introduced based upon which the jury could have found attempted possession of drug paraphernalia with intent to manufacture methamphetamine.

■ We begin our analysis at the first proffered instruction by noting that "it is not error for a court to refuse to give a non-model instruction when a model instruction accurately reflects the law." *Mayo v. State*, 336 Ark. 275, 284, 984 S.W.2d 801, 806 (1999). This court further said in *Mayo* that "[a] trial court should give the jury a nonmodel instruction only when the model instructions fail to correctly state the law or if there is no model instruction on the subject." *Id.* Cluck does not contend that the jury instruction given by the judge failed to correctly state the law; nor does he assert that there is no model instruction on the subject. He merely contends that the proffered instruction would have been more helpful to the jury, in addition to the fact that it is required by statute. We find no error in what the circuit court did on this point.

With respect to the argument that the circuit court should have provided the jury with an instruction on the lesser-included offense of attempted possession of paraphernalia with intent to manufacture, we agree with the State that Cluck failed to demonstrate how he could have been guilty of the lesser crime of attempt. While this court has announced that the "refusal to give an instruction on a lesser-included offense is reversible error if the instruction is supported by even the slightest evidence[,]" we have likewise said "we will affirm a trial court's decision to exclude an instruction on a lesser-included offense if there is no rational basis for giving the instruction." *Ellis v. State*, 345 Ark. 415, 418, 47 S.W.3d 259, 260 (2001); *see also* Ark. Code Ann. § 5-1-110(c) (Repl. 1997).

■ In the instant case, the evidence sufficiently showed that Cluck was guilty of possession of paraphernalia with the intent to manufacture methamphetamine. In order to persuade the circuit judge to give the "attempt" instruction to the jury, Cluck should have argued some rational basis for giving the instruction. This he did not do. Because Cluck failed to offer a rational basis, both before the circuit judge and in his brief on appeal, we hold that the judge did not err in refusing to give Cluck's requested instruction to the jury.

Affirmed. Court of appeals reversed.

HANNAH, C.J., concurs.

JIM HANNAH, Chief Justice, concurring. I concur based on the doctrine of stare decisis. I again note my deep concern

that by abandoning Ark. R. Evid. 404, and by eroding the common-law prohibition against the admission of character evidence, we are ignoring the presumption of innocence and the fundamental right to a fair trial. However, I have already made myself clear that, if we have not already arrived, we are casting aside proof beyond a reasonable doubt by allowing a criminal defendant to be convicted of a crime using evidence of a prior conviction.[1] The evidence of intent in the present case was Cluck's prior conviction for conspiracy to manufacture methamphetamine.

---

[1] *See Saul v. State,* 365 Ark. 77, 225 S.W.3d 373 (2006) (Hannah, C.J., concurring); *Swift v. State,* 363 Ark. 496, 215 S.W.3d 619 (2005) (Hannah, C.J., concurring); *Davidson v. State,* 363 Ark. 86, 210 S.W.3d 887 (2005) (Hannah, C.J., concurring); *Davis v. State,* 362 Ark. 34, 207 S.W.3d 474 (2005) (Hannah, C.J., dissenting); *Fells v. State,* 362 Ark. 77, 207 S.W.3d 498 (2005) (Hannah, C.J., dissenting); *McCoy v. State,* 354 Ark. 322, 123 S.W.3d 901 (2003) (Hannah, J., concurring).