

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CR–13–695

| | |
|---|---|
| | **Opinion Delivered** May 7, 2014 |
| TIMOTHY LEE WHEELER<br>APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTH DIVISION |
| V. | [NO. CR2012-3324] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE HERBERT THOMAS WRIGHT, JUDGE |
| | AFFIRMED |

## BRANDON J. HARRISON, Judge

Timothy Wheeler appeals his conviction of first-degree battery and the related sentence of thirty years in prison. He argues that the jury's guilty verdict is not supported by sufficient evidence. We affirm the conviction and sentence.

### I.

The evidence at trial showed that Wheeler was in an altercation with Jason Bernard near Broadway Street in North Little Rock the night of 4 September 2012. Wheeler and Bernard were acquaintances. Bernard was badly injured during the fight. The police arrested Wheeler near the crime scene, and the State charged Wheeler with committing battery in the first degree. Wheeler went to trial on the charge in May 2013. The trial testimony is summarized below.

The State's first witness at trial was Quinston Penn, who testified that, while heading home around 11:00 p.m. from a shift at Union Pacific Railroad, he saw a man

wearing a white shirt and white hat raise something—like a piece of board—over his head, swing it toward the ground, and then walk off. Penn said that, as he approached this scene, he noticed a bloodied man (later identified as Bernard) lying on the ground. Penn stayed with Bernard until an ambulance arrived. Penn gave the police his contact information and described the suspected assailant as being a man wearing a white shirt and white hat who walked east on Broadway.

North Little Rock Police Officer Michael Nelson responded to the dispatch call and noticed Wheeler walking down Broadway, close to the crime scene. Wheeler matched the suspect's description, so Officer Nelson initiated a conversation with Wheeler. Wheeler told Officer Nelson that he had recently been in an altercation. Officer Nelson placed Wheeler in the back of his police car and drove him back to the crime scene.

Marlando Collins, who also worked a shift at Union Pacific Railroad on September 4, testified that he saw two men in a heated argument on the street when he got off work. Collins circled the block in his car because he was "kind of being nosy just to see what they were going to do." From the witness stand, Collins identified Wheeler as the person who beat Jason Bernard. According to Collins, as Bernard walked away, Wheeler grabbed a stick or wooden board and "swung and hit [Bernard] upside the head with like a baseball swing." Bernard fell face first on the cement. Collins then saw Wheeler hit Bernard again with the board or stick, kick him in the back several times, and then throw the object into a nearby grassy area.

Officer Eric Imhoff testified that he responded to the dispatch call about an injured individual lying on the ground on East Broadway and a Caucasian suspect in all white clothing leaving the area. When Officer Imhoff searched the crime scene, he found a large stick just south of where Bernard fell; the stick appeared to have blood on it. Officer Imhoff testified at trial that the stick was about twenty-eight inches long and three inches around. Photographs of the stick were received into evidence.

Dr. John Cone treated Bernard at the hospital that night and told the jury about the trauma to Bernard's body, which included bruising, swelling, broken ribs, facial fractures, and a skull fracture; he also said that a portion of Bernard's right ear was dangling. Dr. Cone said that these injuries were serious and that there was a risk of death associated with them. He also said that Bernard was hit multiple times given his injuries. During his three-week stay at the hospital's trauma unit, Bernard had to have a trachea tube, a feeding tube, and a catheter.

Bernard's mother, Wanda Jean Campise, testified that her son cannot care for himself anymore and that she must help him bathe and dress. She also told the jury that Bernard spent time in a rehabilitation hospital and a nursing home before she quit her job to take care of him. According to Campise, Bernard has no memory of the attack or of Wheeler.

At the close of the State's case, Wheeler moved for a directed verdict arguing that the State did not sufficiently prove that he caused serious physical injury to Jason Bernard under circumstances manifesting extreme indifference to the value of human life. He also argued that the State did not prove that the stick or branch found near the scene of this

incident was, in fact, used during the alleged crime, that the State offered no Crime Lab results from that branch, and that the eyewitness testimony was inconsistent.

The court denied Wheeler's directed verdict motion. Wheeler took the stand in his own defense and claimed that Bernard was the first aggressor. Wheeler said he acted in self-defense and "didn't mean to hurt [Bernard] that hard." At the close of all the evidence, Wheeler renewed his directed-verdict motion on the same grounds as his first one. The court denied the renewed motion. The jury found Wheeler guilty as charged, and the court sentenced Wheeler, as a habitual offender, to thirty years in the Arkansas Department of Correction.

## II.

When considering Wheeler's challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the State and consider only the evidence that supports the conviction. *Cluck v. State*, 365 Ark. 166, 226 S.W.3d 780 (2006). We must affirm the jury's verdict if it is supported by substantial evidence, which is proof that compels or forces a reasonable mind to move past conjecture or speculation. *Id.*

Wheeler argues that the circumstantial evidence the State produced cannot support his conviction because the only detailed evidence of "what exactly transpired" was provided by Wheeler himself. Wheeler also argues that, even if his testimony is not considered, only circumstantial evidence supports the State's claim that he acted "under circumstances manifesting extreme indifference to the value of human life."

Circumstantial evidence may provide a basis to support a conviction though it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *See Green v. State*, 2013 Ark. 497. The jury gets to decide whether the evidence excludes every other hypothesis. *Id*. Moreover, the credibility of a witness's testimony is for the jury to assess—and it may believe all, part, or none of a witness's testimony. The jury is also tasked with resolving conflicting testimony and any inconsistent evidence. *Id*.

Substantial evidence supports the jury's finding that Wheeler acted under circumstances manifesting extreme indifference to the value of human life. For example, the jury could have believed Marlando Collins's testimony that he saw Wheeler hit Bernard with a wooden stick or board after Bernard tried to walk away from the argument. Officer Nelson saw Wheeler walking quickly away from the area where Bernard lay immobile and severely injured. And according to his own testimony, Wheeler fought with Bernard. There was ample evidence of the severity of Bernard's injuries too. Dr. Cone said that Bernard's injuries were life threatening and were likely caused by multiple strikes or blows. Bernard's mother told the jury that her son can no longer care for himself given the severity of his multiple injuries. Regarding Wheeler's claim that he acted in self-defense, the jury could have either accepted or rejected that explanation. It chose to reject his side of the story, and sufficient evidence supports that decision.



**III.**

The jury's decision was not based on speculation or conjecture, so we affirm Wheeler's conviction and sentence.

Affirmed.

PITTMAN and GRUBER, JJ., agree.

*William R. Simpson, Jr.*, Public Defender, and *Colleen Barnhill*, Deputy Public Defender, by: *Margaret Egan*, Deputy Public Defender, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *LeaAnn J. Adams*, Ass't Att'y Gen., for appellee.